IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

MELANIE LYN STEWART, )
)
    Plaintiff, )
)
 -vs- ) Civil Action No. 18-153
)
NANCY A. BERRYHILL, )
ACTING COMMISSIONER OF SOCIAL )
SECURITY, )
)
    Defendant. )

AMBROSE, Senior District Judge.

## OPINION AND ORDER

### Synopsis

Plaintiff Melanie Lyn Stewart ("Stewart") seeks judicial review of the Social Security Administration's denial of her claim for a period of disability and for disability insurance benefits ("DIB").[1] Stewart alleges a disability onset date of October 28, 2013. (R. 17) The ALJ denied her claim following a hearing at which both Stewart, her sister, and a vocational expert ("VE") appeared and testified. Stewart then appealed. Before the Court are the parties' cross-motions for summary judgment. *See* ECF Docket Nos. 12 and 14. For the reasons set forth below, the ALJ's decision is affirmed.

### Opinion

1. Standard of Review

---

[1] The ALJ determined that Stewart met the insured status requirements of the Social Security Act through June 30, 2019. (R. 19)

1

Judicial review of the Commissioner's final decisions on disability claims is provided by statute. 42 U.S.C. §§ 405(g) and 1383(c)(3)(7). Section 405(g) permits a district court to review the transcripts and records upon which a determination of the Commissioner is based, and the court will review the record as a whole. See 5 U.S.C. § 706. When reviewing a decision, the district court's role is limited to determining whether the record contains substantial evidence to support an ALJ's findings of fact. *Burns v. Barnhart*, 312 F.3d 113, 118 (3d Cir. 2002). Substantial evidence has been defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate." *Ventura v. Shalala,* 55 F.3d 900, 901 (3d Cir. 1995), *quoting Richardson v. Perales,* 402 U.S. 389, 401 (1971). Determining whether substantial evidence exists is "not merely a quantitative exercise." *Gilliland v. Heckler*, 786 F.2d 178, 183 (3d Cir. 1986) (*citing Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)). "A single piece of evidence will not satisfy the substantiality test if the secretary ignores, or fails to resolve, a conflict created by countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence – particularly certain types of evidence (e.g., that offered by treating physicians)." *Id.* The Commissioner's findings of fact, if supported by substantial evidence, are conclusive. 42 U.S.C. §405(g); *Dobrowolsky v. Califano,* 606 F.2d 403, 406 (3d Cir. 1979); *Richardson*, 402 U.S. at 390, 91 S. Ct. 1420.

Importantly, a district court cannot conduct a *de novo* review of the Commissioner's decision, or re-weigh the evidence of record; the court can only judge the propriety of the decision with reference to the grounds invoked by the Commissioner when the decision was rendered. *Palmer v. Apfel*, 995 F.Supp. 549, 552 (E.D. Pa. 1998); *S.E.C. v. Chenery Corp.*, 332 U.S. 194, 196-7, 67 S.Ct. 1575, 91 L.Ed. 1995

2

(1947). Otherwise stated, "I may not weigh the evidence or substitute my own conclusion for that of the ALJ. I must defer to the ALJ's evaluation of evidence, assessment of the credibility of witnesses, and reconciliation of conflicting expert opinions. If the ALJ's findings of fact are supported by substantial evidence, I am bound by those findings, even if I would have decided the factual inquiry differently." *Brunson v. Astrue*, 2011 WL 2036692, 2011 U.S. Dist. LEXIS 55457 (E.D. Pa. Apr. 14, 2011) (citations omitted).

II. The ALJ's Decision

As stated above, the ALJ denied Stewart's claim for benefits. More specifically, at step one of the five step analysis, the ALJ found that Stewart had not engaged in substantial gainful activity since the alleged onset date. (R. 19) At step two, the ALJ concluded that Stewart suffers from the following severe impairments: degenerative discogenic disorders of the spine; osteoarthritis of the bilateral knees; obesity; asthma; migraine headaches; fibromyalgia; anxiety; and depression. (R. 19-20) At step three, the ALJ concluded that Stewart does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 20-22)) Between steps three and four, the ALJ found that Stewart has the residual functional capacity ("RFC") to perform light work with certain restrictions. (R. 22-26) At step four, the ALJ found that Stewart is unable to perform her past relevant work. (R. 26) Ultimately, at the fifth step of the analysis, the ALJ concluded that, considering Stewart's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that she can perform. (R. 27-28)

III. <u>Discussion</u>

(1) Physician Opinion Evidence

As stated above, in formulating Stewart's residual functional capacity, the ALJ concluded that, with certain restrictions, she was able to perform light work with certain limitations. (R. 22-23) Specifically, the ALJ imposed the following limitations:

> She requires a sit/stand option every 60 minutes; she is restricted to *occasional* climbing of ramps and stairs, but must never climb ladders, ropes or scaffolds; she is restricted to *occasional* balancing, stooping, and crouching, but must never kneeling or crawling [sic]; she must never be exposed to extremes of heat, cold, fumes, noxious odors, dusts, mists, gases, and poor ventilation; she can tolerate no more than *moderate* levels of noise …; she must avoid walking outdoors in bright sunlight; she must avoid work with bright or flickering lights, such as would be experienced in welding or cutting metals; she would need access to a rest room within five minutes of her work station; she is limited to simple tasks, decisions, and instructions …; she must have no contact with the public but could have *occasional* contact with co-workers and supervisors; she must avoid jobs that require consistent, rapid or production rate pace; she is restricted to few changes in work processes or location and few independent decisions.

(R. 23) (emphasis in original) In arriving at this conclusion, the ALJ considered and accorded weight to medical opinions set forth in the record. Stewart contends that the RFC determination is not supported by substantial evidence of record because the ALJ failed to properly assess the medical opinions.[2]

The amount of weight to be accorded to medical opinions is well-established. Generally, the ALJ will give more weight to the opinion of a source who has examined

---

[2] At least half of Stewart's brief is devoted to a recitation of the factual and opinion evidence which she contends supports her claim for disability. *See* ECF Docket No. 13, p. 2-12. However, this is the wrong standard. The "question is not whether substantial evidence supports Plaintiff's claims, or whether there is evidence that is inconsistent with the ALJ's findings … substantial evidence could support both Plaintiff's claims and the ALJ's findings because substantial evidence is less than a preponderance. *Jesurum v. Sec'y. of Health & Human Servs.*, 48 F.3d 114, 117 (3d Cir. 1995). … If substantial evidence supports the ALJ's findings, it does not matter if substantial evidence also supports Plaintiff's claims. *Reefer v. Barnhart*, 326 F.3d 376, 379 (3d Cir. 2003)." *Hundley v. Colvin*, 2016 WL 6647913, at * 2 (W.D. Pa. Nov. 10, 2016) (citations omitted).

the claimant than to a non-examining source. 20 C.F.R. § 404.1527(c)(1). In addition, the ALJ generally will give more weight to opinions from a treating physician, "since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." *Id.*, § 404.1527(c)(2). The opinion of a treating physician need not be viewed uncritically, however. Rather, only when an ALJ finds that "a treating source's opinion on the issue(s) of the nature and severity of [a claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence [of] record," must he give that opinion controlling weight. *Id.* Unless a treating physician's opinion is given controlling weight, the ALJ must consider all relevant factors that tend to support or contradict any medical opinions of record, including the patient / physician relationship; the supportability of the opinion; the consistency of the opinion with the record as a whole; and the specialization of the provider at issue. *Id.*, § 404.1527(c)(1)-(6). "[T]he more consistent an opinion is with the record as a whole, the more weight [the ALJ generally] will give to that opinion." *Id.*, § 404.1527(c)(4).

In the event of conflicting medical evidence, the Court of Appeals for the Third Circuit has explained:

> "A cardinal principle guiding disability determinations is that the ALJ accord treating physicians' reports great weight, especially 'when their opinions reflect expert judgment based on continuing observation of the patient's condition over a prolonged period of time.'" *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000), *quoting Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999). However, "where … the opinion of a treating physician conflicts with that of a non-treating, non-

5

> examining physician, the ALJ may choose whom to credit" and may reject the treating physician's assessment if such rejection is based on contradictory medical evidence. *Id.* Similarly, under 20 C.F.R. § [404.1527]([c])(2), the opinion of a treating physician is to be given controlling weight only when it is well-supported by medical evidence and is consistent with other evidence in the record.

*Becker v. Comm'r. of Soc. Sec. Admin.*, 403 Fed. Appx. 679, 686 (3d Cir. 2010). The ultimate issue of whether an individual is disabled within the meaning of the Act is for the Commissioner to decide. Thus, the ALJ is not required to afford special weight to a statement by a medical source that a claimant is "disabled" or "unable to work." *See* 20 C.F.R. § 404.1527(d)(1), (3); *Dixon v. Comm'r. of Soc. Sec.*, 183 Fed. Appx. 248, 251-52 (3d Cir. 2006) ("[O]pinions on disability are not medical opinions and are not given any special significance.").

Although the ALJ may choose whom to credit when faced with a conflict, he "cannot reject evidence for no reason or for the wrong reason." *Diaz v. Comm'r. of Soc. Sec.*, 577 F.3d 500, 505 (3d Cir. 2009). The ALJ must provide sufficient explanation of his final determination to provide a reviewing court with the benefit of the factual basis underlying the ultimate disability finding. *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981). In other words, the ALJ must provide sufficient discussion to allow the court to determine whether any rejection of potentially pertinent, relevant evidence was proper. *Johnson v. Comm'r. of Soc. Sec.*, 529 F.3d 198, 203-04 (3d Cir. 2008).

(a) Physical Health Evidence

Stewart's Brief contains a section devoted to "Physical Health Evidence." *See* ECF Docket No. 13, p. 14-15. Dr. Lillis is the only physician who submitted an opinion

relating to physical impairments. (R. 596-99).[3] Stewart represents that the ALJ "rejected the bulk" of Lillis' opinion, but does not urge that the ALJ should have accepted Lillis' opinion. Rather, she contends that the ALJ inappropriately engaged in a "lay evaluation" of medical evidence.

I disagree. In fact, the ALJ adopted several of Lillis' findings. For instance, the ALJ imposed a sit / stand option every 60 minutes. (R. 22) This is in line with Lillis' finding that Stewart could sit for no more than two-hours at a time, stand for no more than one-hour at a time and that she would need to shift positions. (R. 597) Further, the ALJ imposed greater restrictions in some respects than Lillis thought necessary. Indeed, the ALJ imposed postural and environmental restrictions, which Lillis found were not required, and, unlike Lillis, she limited Stewart to simple tasks, decisions and instructions with few changes in the work processes, or locations and few independent decisions. (R. 23) Additionally, the ALJ cited to other medical evidence of record concerning Stewart's physical impairments such as her ankle, back pain, knee pain, asthma, and multiple sclerosis. (R. 24, Ex. 10F/8, 25, Exs. 8F, 24F, 25, 433, 25, Exs. 25F, 31F, 25) As such, I find that the RFC is not contrary to law and that it is supported by substantial evidence of record. *See Barnett v. Berryhill*, Civ. No. 18-637, 2018 WL 7550259, at * 4-5 (M.D. Pa. Dec. 10, 2018) (noting that, "when an ALJ is relying upon other evidence to conclude that the claimant can do less than a medical source opined, or when an ALJ fashions an RFC in the absence of any medical opinion evidence, courts have adopted a more pragmatic view and have sustained the ALJ's exercise of

---

[3] Stewart references Dr. McDonald's opinion regarding "depression and pain." *See* ECF Docket No. 13, p. 14. However, Dr. McDonald completed a Mental Medical Source Statement. (R. 970-975) McDonald notes simply that Stewart's depression and pain "behave as though reciprocally effected." (R. 973)

independent judgment based upon all of the facts and evidence.") (citations omitted). Consequently, I find no basis for remand with respect to the ALJ's assessment of the physical health opinion evidence.

(b) Mental Health Evidence

Again, Stewart contends that the RFC is not supported by substantial evidence of record because the ALJ allegedly failed to properly weigh the opinion evidence regarding her mental impairments. Dr. McDonald provided a Mental Medical Source Statement. (R. 970-975) In assessing the mental aptitudes needed to do unskilled work, McDonald found that Stewart had an "unlimited or very good" ability to: ask simple questions or request assistance; accept instructions and respond appropriately to criticism from supervisors; and get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes. (R. 972) He also found that Stewart had a "limited but satisfactory" ability to: remember work-like procedures; understand and remember very short and simple instructions; carry out very short and simple instructions; maintain regular attendance and be punctual within customary, usually strict tolerances; sustain an ordinary routine without special supervision; make simple work-related decisions; respond appropriately to changes in a routine work setting; deal with normal work stress; and be aware of normal hazards and take appropriate precautions. (R. 972) However, he found Stewart was "seriously limited" with respect to her ability to: work in coordination with or proximity to others without being unduly distracted and perform at a consistent pace without an unreasonable number and length of rest periods. (R. 972) He also found Stewart was "unable to meet competitive standards" with respect to the ability to complete a normal workday and workweek

8

without interruptions from psychologically based symptoms and had "no useful ability to function" with respect to the ability to maintain attention for two-hour segment. (R. 972) McDonald also opined that Stewart would miss more than four days of work each month. (R. 974)

The ALJ "decline[d] to afford Dr. McDonald's opinion much weight." (R. 25) She explained that the assessment did not disclose when McDonald last treated Stewart and that progress notes from the McClelland Family Practice indicated that Stewart discontinued counseling in May of 2011. (R. 25) The ALJ also noted that McDonald failed to include any progress notes documenting his clinical observations. (R. 25) Further, the ALJ noted that, "[b]eyond receiving psychotropic medicine from her primary care physician Dr. Lillis, the record is devoid of other forms of treatment related to the claimant's anxiety or depression." (R. 25) The ALJ also stated that, at the time of the hearing, Stewart was cooperative, was able to answer questions, and articulated her claims of disability without difficulty. (R. 22) Nevertheless, in accordance with certain of McDonald's findings, the ALJ fashioned an RFC which included mental limitations. She limited Stewart to simple tasks, decisions and instructions; no contact with the general public; occasional contact with co-workers and supervisors; no consistent, rapid, or production-rate pace; few changes in work processes or locations; and few independent decisions. (R. 23) I find that the ALJ provided sufficient explanation of her assessment so as to provide a reviewing court with the benefit of the factual basis underlying the ultimate disability finding. *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981). Further, substantial evidence supports the ALJ's determination in this regard.

In fact, Stewart does not seem to actually dispute the ALJ's specific findings in this regard. She does not identify any records indicating that she sought mental health treatment during the relevant period. Nor does she cite to McDonald's progress notes or treatment records. Instead, she faults the ALJ for failing to develop the record.[4] As the Commissioner urges, the ultimate burden of proof rests with Stewart rather than with the ALJ. *See Webster v. Berryhill*, Civ. No. 16-2403, 2018 WL 1322066, at * 5 (M.D. Pa. Jan. 22, 2018). Both the Social Security Act itself and the corresponding regulations provide that the claimant bears the burden of presenting evidence of a disability. *See* 42 U.S.C. § 423(d)(5)(A) ("An individual shall not be considered to be under disability unless he furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require."); 42 U.S.C. § 404.1512(a) ("[I]n general, you have to prove to us that you are … disabled. This means that you must furnish medical and other evidence that we can use to reach conclusions about your medical impairment(s)."). "The burden lies with the claimant to develop the record regarding his or her disability because the claimant is in a better position to provide information about his or her own medical condition." *Webster*, 2018 WL 1322066, at * 5, *citing, Money v. Barnhart*, 91 Fed. Appx. 210, 215 (3d Cir. 2004) (*citing, Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987)). "Although the ALJ must eliminate evidentiary gaps that prejudice

---

[4] Stewart also urges that, if the ALJ found her complaints inconsistent with the record based upon the insufficiency or extent of treatment, the ALJ was required to consider the possible reasons for failure to seek treatment pursuant to SSR 16-3p. *See* ECF Docket No. 13, p. 15-16. Certainly, it is well-established that an "ALJ may rely on lack of treatment, or the conservative nature of treatment, to make an adverse credibility finding, but only if the ALJ acknowledges and considers possible explanations for the course of treatment." *Wilson v. Colvin*, Civ. No. 13-0241, 2014 WL4105288, at * 11 (M.D. Pa. Aug. 19, 2014). Here, Stewart faults the ALJ for failing to consider her "insurance difficulties." Yet Stewart *did not* lack insurance benefits. As her daughter testified, Stewart had state insurance at all times. When McDonald retired, she had access to mental health treatment through Safe Harbor and Stair Ways, yet chose not to pursue care through those groups. (R. 41, 65-68) The ALJ noted that, after McDonald retired, Stewart chose not to seek any other form of mental health care treatment. (R. 24) Given the fact that Stewart had insurance, I do not find the reference to SSR 16-3p to be persuasive in this context.

the claimant's case and resolve any material conflict or ambiguity in the evidence, *Money*, 91 Fed. Appx. at 216, the ALJ is not required to 'search out all relevant evidence which might be available, since that would in effect shift the burden of proof to the government." *Webster*, 2018 WL 1322066, at * 5, *quoting, Hess v. Sec'y. of Health, Educ. & Welfare*, 497 F.2d 837, 840 (3d Cir. 1974). Given that Stewart has been represented by counsel since she filed her application for disability; that she had ample time to secure McDonald's treatment records and / or request a psychological examination; and her counsel's representation to the ALJ that the record was complete; I find her contention that the ALJ failed to develop the argument to be without merit. See *Webster*, 2018 WL 1322066, at * 5 (rejecting a claim of failure to develop the record where the claimant was represented by counsel; where counsel had the opportunity to request a consultative examination but did not; and where counsel represented that the record was complete).

(2) Stewart's Subjective Complaints

Stewart also contends that the ALJ failed to adequately explain the rejection of her subjective complaints in contravention of SSR 16-3p. SSR 16-3p went into effect on March 28, 2016 and supersedes SSR 96-7p, the previous rule governing the evaluation of subjective symptoms. *See*, SSR 16-3p, 2016 WL 1119029 (March 16, 2016). SSR 16-3p removes the term "credibility," clarifying that the subjective symptom evaluation is not an examination of an individual's character but rather that an ALJ is to "consider all of the evidence in an individual's record … to determine how symptoms limit ability to perform work-related activities." *Id.*, at * 2. In so doing, an ALJ is to use a two-step process. *Id.*, at * 2-3. Thus, after an ALJ finds "that the individual has a medically

11

determinable impairment(s) that could reasonably be expected to produce those symptoms," the ALJ shall then consider all of the evidence in the record when he/she evaluates the intensity and persistence of symptoms to determine how "symptoms limit [the] ability to perform work-related activities." *Id.* In this regard, and to the extent relevant and available, the ALJ should consider objective medical evidence; individual statements; other medical sources; non-medical sources; the factors set forth in 20 C.F.R. § 404.1529(c)(3) and § 416.929(c)(3) including daily activities; the location, duration, frequency and intensity of pain or other symptoms; factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; treatment other than medication an individual receives or has received for relief of pain or other symptoms; any measures other than treatment used to relieve pain or other symptoms; and any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms. *Id.*, at * 4-7.

Here, the ALJ cited to 20 C.F.R. § 404.1529,[5] and although she did not specifically reference SSR 16-3p, a plain reading of the opinion demonstrates that the ALJ followed its mandates. After the ALJ set forth the two-part test, she applied it to the individual facts of the case using the factors set forth above. Specifically, the ALJ discussed the limiting effects of pain and other symptoms associated with Stewart's degenerative spinal disorders, bilateral osteoarthritis of the knees, obesity, fibromyalgia, asthma, depression and anxiety, joint and knee pain, migraine headaches and irritable bowel syndrome. (R. 23-26). The ALJ considered, in length and in detail, Stewart's pain

---

[5] SSR 16-3p generally tracks 20 C.F.R. § 404.1529(c) and § 416.929(c).

and made an assessment based upon the entire record. (R. 23-26) I must defer to the ALJ's determinations, unless they are not supported by substantial evidence. *Smith v. Califano*, 637 F.2d 968, 972 (3d Cir. 1981); *Baerga v. Richardson*, 500 F.2d 309, 312 (3d Cir. 1974), *cert. denied*, 420 U.S. 931 (1975). I find the ALJ's determination in this regard is supported by substantial evidence of record. Thus, I find no merit to this argument.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MELANIE LYN STEWART | ) | |
|     Plaintiff, | ) | |
| | ) | |
|   -vs- | ) | Civil Action No. 18-153 |
| | ) | |
| NANCY A. BERRYHILL, | ) | |
| ACTING COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | |
| | ) | |
|     Defendant. | ) | |

AMBROSE, Senior District Judge.

## ORDER OF COURT

Therefore, this 4th of April, 2019, it is hereby ORDERED that the Plaintiff's Motion for Summary Judgment (Docket No. 12) is DENIED and the Defendant's Motion for Summary Judgment (Docket No. 14) is GRANTED. It is further ORDERED that the ALJ's decision is AFFIRMED. This case shall be marked "Closed" forthwith.

                                              BY THE COURT:

                                              /s/ Donetta W. Ambrose
                                              Donetta W. Ambrose
                                              United States Senior District Judge